UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEKERIJAH HADZIC,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:20-cv-00640 CKD (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability and disability insurance benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

At the hearing on his claim in September 2018, plaintiff testified (through an interpreter) to the following: He was born in Bosnia in 1966 and immigrated to the United States in 1999, speaking only Bosnian. AT 47-48. In Bosnia, he was trained as a metal worker and worked on a

1

farm, where he drove a tractor, planted crops, and took care of animals. AT 47-49. He was drafted into the Yugoslavian army and worked as a radio operator on base. AT 57-58. Plaintiff testified that he witnessed genocide, including killings and dead bodies, and continued to experience psychological distress from these memories. AT 59-61.

After the Bosnian genocide, he moved to Germany, where he worked in the lumber and construction industries for seven years, loading lumber and assisting the operator of a large drill that made holes in the ground. AT 50-51. After moving to the United States, he worked as a truck driver for five years. AT 53.

In April 2016, plaintiff sought treatment for persistent back pain and muscle spasms, which he ascribed to a car accident four months earlier. AT 384. He was diagnosed with acute exacerbation of chronic low back pain and other chronic pain, and prescribed an opioid pain reliever, Ibuprofen, and a muscle relaxant. AT 385. The medical record reflects that, over the next two years, he repeatedly sought treatment for back pain and numbness in his left leg, anxiety, depression, insomnia, and flashbacks.

Plaintiff applied on August 9, 2016 for disability benefits and SSI, alleging disability beginning February 15, 2016. Administrative Transcript ("AT") 29. Plaintiff alleged he was unable to work due to anxiety, depression, paranoia, and back problems. AT 242. In a decision dated December 5, 2018, the ALJ determined that plaintiff was not disabled.[1] AT 19-31. The

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

2

ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2016, the alleged onset date.
>
> 3. The claimant has the following severe impairments: anxiety, depression, posttraumatic stress disorder (PTSD); and degenerative disc disease of the lumbar spine.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work. In particular, claimant can lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight-hour workday and sit for eight hours in an eight-hour workday. He can occasionally climb ladders, ropes, scaffolds; frequently stoop, crawl, and crouch. He can perform simple jobs with no public contact and occasional interactions with supervisors and coworkers. He can make simple workplace adjustments.
>
> 6. The claimant is capable of performing past relevant work.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2016, through the date of this decision.

AT 21-30. The ALJ noted plaintiff's previous work as a truck driver and relied on vocational expert testimony to conclude that plaintiff could perform past relevant work as a driller. AT 29.

---

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

| | |
|---|---|
| 1 | The ALJ also made the following alternative findings at Step Five: |
| 2 | |

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. . . .
>
> The claimant was born on XX/XX/1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant has at least a high school education and is able to communicate in English. Transferability of job skills is material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in the national economy that the claimant can also perform.

AT 29.

The ALJ found that plaintiff could not perform the full range of medium work, as his "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." AT 30. The ALJ relied on vocational expert testimony to conclude that, given plaintiff's age, education, work experience, and RFC, he could perform the requirements of jobs including dishwasher, janitor, and laundry worker. AT 30.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinions as to mental and physical limitations; (2) the ALJ erred in discounting plaintiff's subjective statements about his symptoms; (3) the ALJ erred in rejecting third party testimony; and (4) the ALJ erred in identifying which jobs plaintiff could perform.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ erred in evaluating the medical opinions on physical and mental limitations, such that both aspects of the RFC are unsupported by substantial evidence.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

---

[2] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).  Because Plaintiff filed his SSI application on August 9, 2016, it is subject to the earlier rules for the evaluation of medical evidence.

F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Tolentino

In determining that plaintiff could perform medium exertional work, the ALJ relied on the opinion of State agency medical consultant Dr. S. Amon, who reviewed the record in January 2017 and opined that plaintiff could perform medium exertional work with certain postural limitations.[3] AT 27, citing AT 99-113.

The ALJ also reviewed the June 2018 opinion of consultative physician Dr. Ethelynda Tolentino, who

> examined the claimant and concluded that the claimant can lift/carry/20 pounds occasionally and 10 pounds frequently. He can

---

[3] The ALJ discounted the opinion of a second State agency medical consultant, Dr. A. Dipsia, who opined that plaintiff's physical condition was nonsevere. AT 27-28, citing AT 69-82. The ALJ reasoned that plaintiff's use of prescription pain medication suggested a severe impairment. AT 28.

6

|  | stand/walk up to four hours in an eight-hour day; sit up to six hours in an eight-hour workday. Assistive device required would be a standard cane provided to him by his physician. He can occasionally climb steps/stairs, no climbing of ladders/ropes/scaffolds, no balancing, occasional stooping, crouching, kneeling and crawling. |

AT 28, citing AT 463-472.

In her comprehensive orthopedic evaluation, Dr. Tolentino reviewed plaintiff's medical records from April 2016 to August 2016. During these months, plaintiff was prescribed Valium and ibuprofen for low back pain and underwent x-rays of his left hip, right hip, and lumbar spine. AT 463. The x-rays showed no acute fracture or dislocation in the hips, and "disc disease at L2-3 and L3-4, and facet arthropathy at L4-5 and L5-S1." AT 463.

Dr. Tolentino noted that plaintiff presented with "low back pain which radiates to his legs, but is primary to the left leg." AT 464. "His pain is aggravated by walking, sitting, and prolonged positioning. The pain is alleviated by medications and lying down." AT 464. Dr. Tolentino noted that plaintiff "ambulates independently with a standard cane . . . given to him by his physician." AT 465.

Dr. Tolentino diagnosed plaintiff with chronic low back pain, lumbar spondylosis, lumbar degenerative disc disease, and positive Waddell's test. AT 466. Summarizing her findings, Dr. Tolentino wrote:

> The claimant has been complaining of low back pain for 2 ½ years. The pain radiates to both legs and he complains of numbness and tingling sensation in his legs when walking. This is a really difficult examination because there are positive Waddell's signs. The claimant also refused to perform lumbar spine range of motion due to fear of falling. He had break-away weaknesses in both lower extremities and so it is really difficult to assess the strength in his legs, but he had good strength in both upper extremities. There is no atrophy in his extremities. The only imaging study available is x-rays of the lumbar spine which showed degenerative disc disease and spondylosis. Additional imaging studies, in this case, MRI of the lumbar spine, would help to further render an objective basis for this claimant's medical problem with his back. It is really difficult to rule out the possibility of lumbar radiculitis/radiculopathy.

AT 467. Dr. Tolentino concluded that plaintiff had a medical condition imposing physical limitations (summarized above, including a four-hour limit on standing/walking and a six-hour limit on sitting) for at least 12 continuous months. AT 28. As to the opined postural limitations,

Dr. Tolentino added: "Again, it is difficult to give more restrictions than these because I have no other objective basis for doing so other than the lumbar degenerative disc disease and lumbar spondylosis that is seen on the [July 2016] x-rays." AT 467.

The ALJ discounted this opinion, reasoning as follows:

> The opinion of (CE) Dr. Tolentino is afforded less weight. Her own-authored notes indicate that she has questions unanswered. She indicated examination was difficult because there are positive Waddell's signs. The claimant also refused to perform lumbar spine range of motion. He had good strength in both upper extremities and no atrophy. Moreover, Dr. Tolentino's opinion is inconsistent with other medical opinions in the record in regard to stand/walk limitations.

AT 28.

Under the applicable rules, the contradicted opinion of an examining doctor may be rejected for "specific and legitimate" reasons, supported by substantial evidence. The ALJ's first reason for discounting Dr. Tolentino's opinion was that she had "unanswered questions" during the exam. As set forth above, without the aid of an MRI, she found it "really difficult to rule out the possibility of lumbar radiculitis/radiculopathy." AT 467.

In fact, in August 2017, ten months before Dr. Tolentino's evaluation, plaintiff underwent an MRI of the lumbar spine that showed multiple disc bulges, multilevel spondylosis[4], and mild to moderate stenosis[5] in two places. AT 570. In April 2018, weeks before Dr. Tolentino's orthopedic evaluation, treating pain specialist Dr. Sara Nicknam diagnosed plaintiff with lumbar

---

[4] "Spondylosis is another name for symptomatic, degenerative arthritic changes in the spine, commonly referred to as arthritis. . . . For patients suffering with lumbar (low-back) spondylosis the symptoms may include generalized aching, pain, or stiffness in the low back, including muscle spasms or tightness. If there is pressure on the spinal nerves you may have numbness, tingling, pain, or weakness in the legs also known as a radiculopathy." Source: https://www.spinemd.com/what-we-treat/neck/spondylosis/ (last visited July 14, 2021).

[5] "Lumbar spinal stenosis is a narrowing of the spinal canal in the lower part of your back. Stenosis, which means narrowing, can cause pressure on your spinal cord or the nerves that go from your spinal cord to your muscles." Source: https://www.hopkinsmedicine.org/health/conditions-and-diseases/lumbar-spinal-stenosis (last visited July 14, 2021).

spondylosis with radiculopathy, and prescribed a back brace to wear "for flareups . . . for 3-5 days at a time to prevent muscle weakness." AT 810. The ALJ does not address this medical evidence, and Dr. Tolentino did not have the opportunity to review it, though she explicitly stated that an MRI of the lumbar spine would have helped to objectively assess plaintiff's back problems. It is not clear why Dr. Tolentino was only able to review medical records from 2016, but in any case, the fact that she had "unanswered questions" is not a valid reason to discount her opinion.

The ALJ also cited difficulty of examination and Waddell's signs as reasons to discount Dr. Tolentino's opinion. The Waddell test "establishes five 'signs' of nonorganic sources of lower back pain and does not distinguish between malingering and psychological conditions." Wick v. Barnhart, 173 F. App'x 597, 598 (9th Cir. 2006). "Notably, the Ninth Circuit has raised considerable doubt about the adequacy of 'Waddell tests' to establish a claimant's malingering in recent years." Castro v. Colvin, 2015 WL 9470939, at *2 (C.D. Cal. Dec. 28, 2015). "To have practical meaning and constitute substantial evidence in the disability context, a physician must typically identify the number of Waddell signs observed and ascribe significance to those signs." Id. at *3 (internal quotation marks and citation omitted, alterations normalized). The Ninth Circuit has rejected Waddell signs when the source fails to identify either the number of signs or "whether they were attributable to malingering rather than psychological conditions." Wick, 73 F. App'x at 598.

Here, Dr. Tolentino did not identify the number of signs or whether they were attributable to malingering or psychological conditions; thus, her reference to Waddell's signs is of little probative value. Her opinion reflects that plaintiff "refused to perform lumbar spine range of motion due to fear of falling." In fact, plaintiff had expressed such fears in other medical settings and used a cane to help keep his balance. See AT 712 (2017 medical note that plaintiff rose very slowly from sitting to standing and used a cane); AT 641 (2017 medical note that plaintiff had been in severe pain and was scared because he had been falling a lot); AT 637 (plaintiff prescribed a walker to prevent falls and help with ambulation); AT 541 (plaintiff reported he was not falling as much with use of walker); AT 476 (2018 visit to ER after a fall that worsened

9

plaintiff's back pain and broke his dental bridge); AT 513 (2018 report that plaintiff was scared and had been falling). Plaintiff's history of falls and muscle weakness, coupled with his well-documented anxiety and fear, suggest he was genuinely worried about falling during the examination, which made it difficult to evaluate his lumbar range of motion. This does not constitute substantial evidence against Dr. Tolentino's medical opinion.

The ALJ's final reason for discounting Dr. Tolentino's opinion was its inconsistency with the State agency doctors' opinions with respect to stand/walk limitations. However, as noted above, the only other two doctors to opine on plaintiff's physical limitations did not have access to his medical records after January 2017, including his lumbar MRI and his ongoing problems with back pain, weakness, and falls. Moreover, as an examining physician, Dr. Tolentino's opinion is entitled to more weight than reviewing physicians' opinions under the applicable rules. See Taylor v. Comm'r of Soc. Sec., 659 F.3d 1228, 1233 (9th Cir. 2011) (ALJ erroneously rejected examining physician opinion because it was inconsistent with the State agency physician opinion).

Based on the foregoing, the undersigned concludes that the ALJ committed reversible error in evaluating the opinion of examining physician Dr. Tolentino, such that the physical RFC is not supported by substantial evidence.[6]

B. Credibility

Plaintiff asserts that the ALJ also committed reversible error in discounting plaintiff's subjective statements about his symptoms.

The ALJ summarized plaintiff's hearing testimony, writing in part:

> [C]laimant testified that he is unable to work due to back pain and left leg sometimes goes numb. He has a walker with seat because sometimes he loses feelings in his legs and falls. He says pain is relieved with Norco and Morphine. He also suffers from depression and insomnia. He also has trauma from genocide in Bosnia causing flashbacks, seeing killings and dead bodies, causing trouble with restorative sleep. There are days that he isolates and does not like to leave his room.

---

[6] The court does not reach the issue of whether the ALJ erred in evaluating the mental health opinions.

10

AT 25; see AT 53-55, 59-62.

Plaintiff made many similar statements about his physical and mental symptoms during the alleged period of disability. In an August 2016 written statement, for example, he indicated that it was hard to get dressed because he couldn't bend over due to back pain. AT 249. He stated that he could not lift more than 20 pounds or walk or sit more than 30 minutes, and that he used a walker or cane when he walked. AT 253-254. In November 2017, he told licensed clinical social worker (LCSW) Shawn Hackett that he had been in a lot of really bad pain that made him want to cry, and that he heard noises that sounded like plates crashing together. AT 641. One month later, he told LCSW Hackett that he was having flashbacks, nightmares, anxiety, and panic attacks, and that "everything is too loud in my ears." AT 541. His wife, who was present and translating for him, told Hackett she believed that plaintiff's panic attacks and anxiety were related to trauma he experienced in the Bosnian wars in the 1990s. AT 541.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can be reasonably accepted as consistent with the objective medical and other evidence." AT 25. The ALJ reasoned that plaintiff's subjective statements were "diminished because those allegations are greater than expected in light of the objective evidence of record discussed below." AT 25.

The ALJ then summarized the record as to chronic back problems, citing evidence that "the medications are helping with pain and that overall he is able to function." AT 26. The ALJ next summarized the mental health record, concluding that plaintiff's "mental health condition appears similarly well controlled." AT 26-27. The ALJ then summarized the medical opinion evidence, determining that "the claimant's allegations are inconsistent with medical opinions that show the claimant has considerable work-related abilities despite his impairments." AT 27.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an

explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The Ninth Circuit recently clarified that, when discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

> To be sure, we confirm our precedent does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony...." Lambert, 980 F.3d at 1277.  But the ALJ's detailed overview of [the claimant's] medical history—coupled with a nonspecific boilerplate conclusion that her testimony was "not entirely consistent" with her medical treatment—was not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78; see Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's symptom] testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony."). Summarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing reasons to discredit that testimony.  See Lambert, 980 F.3d at 1278. This is reversible error.  Id. ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014))).

Wade, 850 F. App's at 569.

Similarly, here, the ALJ's boilerplate assertions that plaintiff's testimony was somewhat inconsistent with the medical record, review of the objective evidence and opinions, and observations that plaintiff's physical and mental symptoms improved with treatment, are not

////

legally sufficient to reject plaintiff's testimony under the Lambert standard. The undersigned finds reversible error on this basis as well. Plaintiff is entitled to summary judgment.[7]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record has been fully developed, and further administrative proceedings would serve no useful purpose. In this regard, the voluminous record includes multiple medical opinions, medical evidence, plaintiff's testimony, lay witness testimony, and the testimony of a vocational expert. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting evidence. If the examining physician's opinion as to physical limitations and plaintiff's subjective statements about his physical and mental symptoms were credited as true, the ALJ would be required to find the claimant disabled on remand. See AT 65-66 (vocational expert

---

[7] The court does not reach the remaining claims.

testimony that "using a walker would rule out all of the jobs I provided, as well as the past job of driller," and that missing two days of work a month for mental health reasons would also preclude all work). Moreover, the record as a whole does not create serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted;
2. Defendant's cross-motion for summary judgment (ECF No. 21) is denied;
3. The Commissioner's decision is reversed;
4. This matter is remanded for the immediate award of benefits; and
5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: July 16, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/hadzic0640.ssi.ckd